UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES ALLEN STINSON, III,** Petitioner, v. **JAMES SCHIEBNER,** Respondent. | 2:23-CV-11201-TGB-KGA<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING THE MOTION TO BAR RESPONDENT'S RESPONSE (ECF NO. 6) AND TO STAY THE DECISION PENDING A DECISION ON THE MOTION TO BAR THE RESPONSE (ECF NO. 9)** |

James Allen Stinson, III ("Stinson"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. In his pro se application, Stinson challenges his conviction for three counts of possession with intent to deliver a controlled substance less than 50 grams, MCL § 333.7401(2)(a)(iv); two counts of possession with intent to deliver methamphetamine, MCL § 333.7401(2)(b)(i); and third-degree fleeing and eluding a police officer, MCL § 750.479a(3). For the reasons below, Stinson's petition for a writ of habeas corpus is **DENIED**.

# I. BACKGROUND

Stinson was convicted following a bench trial in the 4th Circuit Court of Jackson County, Michigan. The Court recites the facts of Stinson's conviction verbatim from the Michigan Court of Appeals opinion affirming his conviction—presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> In January 2019, the Jackson County Sherriff's Department received a tip identifying defendant as a suspected drug dealer. After surveilling defendant traveling between two residences in Jackson, Michigan, one on Union Street and the other on Jackson Street, defendant was detained and arrested during a traffic stop, and Jackson County Sherriff's Detective Samuel Sukovich secured and executed search warrants for the residences.
>
> At the first residence on Union Street, law enforcement entered a padlocked bedroom and discovered drugs alongside defendant's personal items. These items included defendant's expired identification card, his social security card, and court paperwork with his name. The drugs confiscated by law enforcement contained 5.8 grams of heroin, 4.357 grams of methamphetamine, and 3.4 grams of crack cocaine. In addition to the fact that some of the seized drugs were packaged for distribution, law enforcement also found a scale and a packaging station with unused packaging material. At the second residence on Jackson Street, multiple items related to drug manufacturing and packaging were found, such as a bottle of narcotic additive, plastic sandwich bags with corners cut off, and a scale. However, no illegal drugs were found at the Jackson Street residence during this search.

> After defendant was arrested, investigators began listening to defendant's phone calls from jail. In certain telephone calls, defendant spoke with an individual who lived at the Jackson Street residence. During these conversations, defendant referred to "his stuff" or "his sh**," and revealed that "[he] already knows that [law enforcement] didn't find the stuff" at Jackson Street, and that he "wants [the other resident] to give the sh** to some [sic], to someone else." During other phone calls, defendant identified two individuals who were suspected drug traffickers as persons who may be able to remove the "stuff" from Jackson Street.
>
> As a result of the recordings of defendant's jail phone calls, Detective Sukovich secured and executed a second search warrant for the Jackson Street residence. During the search of a shed behind the residence, investigators discovered inside a backpack a salt shaker containing a false bottom. The secret compartment contained drugs in plastic bags, collectively amounting to 9.919 grams of heroin and 14.027 grams of methamphetamine.

*People v. Stinson*, No. 359191, 2022 WL 17169584, at *1 (Mich. Ct. App. Nov. 22, 2022), *lv. den.*, 986 N.W.2d 916 (Mich. 2023).

Petitioner seeks a writ of habeas corpus on the following basis:

> Contrary to the substantive law defining possession, Petitioner Stinson's conviction was based on insufficient evidence, violating due process of law, while the Court of Appeals erroneously determined the facts, each of which caused a substantially [sic] and injurious effect.

ECF No. 1, PageID.4.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court concludes opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

4

incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington,* 562 U.S. at 103.

### III. DISCUSSION

#### A. The motion to bar the respondent's response and the motion for a stay are denied.

Stinson has moved to bar the respondent's response. The gist of his argument is that the State of Michigan waived the right to respond to his habeas petition because it failed to answer his application for leave to appeal that he filed with the Michigan Supreme Court.

Courts in the Eastern District of Michigan have held that Michigan law does not require a party to answer an application for leave to appeal either in the Michigan Court of Appeals or the Michigan Supreme Court. *See e.g., Corrion v. Lafler*, No. 10-10593, 2013 WL 1645671, at *12 (E.D. Mich. Apr. 11, 2013) (Lawson, J.). The *Corrion* court observed that the language of Mich. Ct. R. 7.205(C) and 7.302(D)(1)— appellate court rules

5

in effect at the time—indicate that a party *may* answer the application, but that there is no requirement to do so. *Id.*

Mich. Ct. R. 7.305(D)—the *current* court rule for filing applications for leave to appeal in the Michigan Supreme Court—likewise contains the same language providing that a party may file an answer. Because a party does not need to answer an application for leave to appeal, the State of Michigan did not waive its right to file an answer. Consequently, Stinson's motion to bar the State's response is denied, and his related motion to stay the proceedings is denied as moot.

**B. The Court declines to invoke the concurrent sentencing doctrine.**

Respondent urges this Court to deny the petition under the concurrent sentencing doctrine, noting that Stinson is only challenging the sufficiency of evidence for the drug convictions, but not for the fleeing and eluding conviction. Therefore, even if he were to succeed in getting his drug convictions vacated, Stinson would still be serving time on his fleeing and eluding conviction.

The concurrent sentence doctrine allows a federal court to decline to review habeas corpus petitions "which challenge criminal convictions that have resulted in sentences, and other collateral consequences, which are wholly subsumed by those conferred by other unassailable convictions." *Wilson v. Straub,* 185 F. Supp. 2d 766, 769 (E.D. Mich. 2002) (internal quotation omitted). Yet a federal district court should decline to

review habeas claims under the concurrent sentence doctrine only when "it is clear that there would be no collateral consequences to the petitioner and the issue does not involve a significant question that merits consideration." *Id.* "The concurrent sentencing doctrine is a discretionary one, and courts 'are admittedly hesitant to apply [it].'" *Groves v. Meko*, 516 F. App'x 507, 508 (6th Cir. 2013) (quoting *Dale v. Haeberlin*, 878 F.2d 930, 935, n.3 (6th Cir. 1989)).

Moreover, it is unclear if the concurrent sentencing doctrine would apply here. Stinson was sentenced as a fourth-offense habitual offender, MCL § 769.12, to 13 to 40 years imprisonment for each of his possession with intent to deliver a controlled substance less than 50 grams convictions; 5 to 40 years imprisonment for each of his possession with intent to deliver methamphetamine convictions; and 4 to 15 years imprisonment for his fleeing and eluding conviction. If Stinson were to obtain habeas relief on his drug convictions, his minimum sentence would be reduced from 13 to 4 years and his maximum sentence would be reduced from 40 to 15 years. Moreover, Stinson could still file a post-conviction motion for relief from judgment to challenge his fleeing and eluding conviction. For these reasons, the Court declines to invoke the concurrent sentence doctrine.

### C. The evidence was sufficient to convict.

Stinson claims the evidence was insufficient to convict him of the various drug offenses.

7

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). However, the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (internal citation and footnote omitted)(emphasis in the original). The *Jackson* standard applies to bench trials as well as to jury trials. *See, e.g., United States v. Bronzino,* 598 F.3d 276, 278 (6th Cir. 2010).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547

8

F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence"). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"). Circumstantial evidence is enough to sustain a conviction at a bench trial. *See, e.g., United States v. Baydoun*, 984 F.2d 175, 179 (6th Cir. 1993).

     A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Rather, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656

9

(2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court, therefore, must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *see also United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020) (in a bench trial, credibility of witnesses is a question for trial judge).

Stinson contends that there was insufficient evidence that he possessed the controlled substances that the police seized, to sustain his convictions. The Michigan Court of Appeals rejected Stinson's claim:

> At the Union Street residence, defendant's personal items were discovered comingled with the drugs. These personal items included defendant's identification cards and court papers. The presence of defendant's personal items stored alongside the drugs in a padlocked bedroom is circumstantial evidence that creates a reasonable inference that defendant possessed what was stored inside the locked room, including the drugs. Indeed, during one recording of defendant's jail telephone calls, defendant referred to the Union Street residence as "our" house, which also creates a reasonable inference that defendant had possession over the contents

10

found there. Given the totality of the circumstances, we conclude that the prosecutor presented sufficient evidence for the trial court to find that there was a sufficient nexus between defendant and the drugs found at the Union Street residence for purposes of possession.

With respect to the drugs found at Jackson Street, defendant's statements made on the telephone while in jail similarly show circumstantial evidence that creates a reasonable inference that defendant had possession over the drugs found inside the shed. During telephone calls, he referred to the drugs as "his sh**" or "his stuff." While defendant never explicitly referred to the drugs by name, it was clear from the context of defendant's predicament and the recordings themselves that defendant was referring to illegal drugs. For example, in one recording, defendant attempted unsuccessfully to instruct the person he was speaking with—an individual who lived at the Jackson Street residence—to give "his sh**" to persons known to law enforcement to be involved with drug trafficking. Not only does the recording tend to show defendant was referring to drugs, the recording also demonstrated defendant was exercising control, though ineffectual, over the drugs. Thus, like the evidence found at the Union Street residence, the prosecutor presented sufficient evidence for the trial court to find that defendant possessed the drugs found in the shed at the Jackson Street residence.

*People v. Stinson*, 2022 WL 17169584, at *2 (internal citation omitted).

Under Michigan law, to convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (1) that the recovered substance is a narcotic; (2) the weight of the substance; (3) that the defendant was not authorized to possess the substance; and

11

(4) that the defendant knowingly possessed the substance with the intent to deliver it. *See People v. McGhee,* 268 Mich. App. 600, 622; 709 N.W.2d 595 (2005). In order to convict a defendant under Michigan law of possession of a controlled substance, a prosecutor must prove that he exercised control or had the right to exercise control over the controlled substance. *See McFarland v. Yukins,* 356 F.3d 688, 708 (6th Cir. 2004) (citing *People v. Konrad,* 449 Mich. 263; 536 N.W.2d 517 (1995)) (additional citations omitted). Under Michigan law, a defendant need not have actual physical possession of a controlled substance to be guilty of possessing it. *People v. Wolfe,* 440 Mich. 508, 519–20; 441 N.W.2d 1201 (1992). Possession of a controlled substance may be actual or constructive. *Id.* "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521. Constructive possession of a controlled substance can be proven by circumstantial evidence. *See McGhee,* 268 Mich. App. at 623; *see also United States v. Gibbs,* 182 F.3d 408, 424 (6th Cir. 1999).

Here, the Michigan Court of Appeals reasonably concluded that a rational trier of fact could find that Stinson constructively possessed the controlled substances recovered from the two locations.

As for the drugs recovered from the Union Street residence, Stinson's identification, Social Security card, and recent court paperwork were found commingled with the drugs. ECF No. 8-14, PageID.319–22,

12

328). Baggies of heroin, cocaine, and methamphetamine were recovered from dresser drawers in the bedroom; and a baggie of cocaine was discovered on top of men's clothing. *Id.* at PageID.317–18. Following his arrest, Stinson, in a recorded jail phone call, asked Julie Underwood, his co-resident at 502 South Union, to tell the police that he did not live there. In the same conversation, Stinson repeatedly referred to 502 South Union as "our house." He also referred to a telephone found under the bed in the same room where the drugs were found. *Id.* at PageID.357–60.

The discovery of several documents in Stinson's name close by the narcotics at the Union Street address was sufficient circumstantial evidence for a rational trier of fact to conclude that Stinson had the right to control the narcotics that were recovered from the bedroom. *See Anderson v. Trombley,* 451 F. App'x 469, 475 (6th Cir. 2011). In addition, men's clothing was found in the bedroom near the drugs. This evidence established a link between Stinson and the narcotics recovered from the bedroom. *Id.* Stinson also referred to the Union Street residence as "our house" in his conversation with Ms. Underwood. Stinson's admission that he lived at the Union Street address where the cocaine was recovered was sufficient to establish that he constructively possessed the drugs. *See United States v. Leary,* 422 F. App'x 502, 507 (6th Cir. 2011).

The mere fact that Ms. Underwood also lived at this address would not undermine the judge's finding that Stinson possessed the drugs.

13

When multiple residents occupy a house, controlled substances or weapons need not be discovered in a particular room to show constructive possession; for a jointly occupied home, constructive possession can be shown through minimal, purely circumstantial evidence connecting one occupant to the contraband. *See United States v. Latimer*, 16 F.4th 222, 227 (6th Cir. 2021). Under Michigan law, the prosecution is only required to prove that Stinson had joint, and not exclusive, possession of the controlled substances. *McFarland,* 356 F.3d at 710 (citing *People v. Konrad*, 449 Mich. 263; 536 N.W.2d 517 (1995)). Federal law agrees on this point. *Gibbs,* 182 F.3d at 425. Although the state trial judge was free to believe that the cocaine belonged to Ms. Underwood, the judge was not required to do so and could instead readily infer from the evidence that Stinson—either alone or in connection with Ms. Underwood—possessed the cocaine. *See United States v. Caldwell*, 518 F.3d 426, 432 (6th Cir. 2008).

Finally, the mere fact that the police did not recover a key to the residence from Stinson did not preclude the judge from finding him guilty of constructive possession of the drugs, considering the other evidence here. *See, e.g., Towns v. Jackson,* 287 F. Supp. 2d 749, 755–58 (E.D. Mich. 2003).

Although Stinson did not live at the 940 South Jackson Street residence, he had a relationship with Kim VanRenan, who did live there. ECF No. 8-14, PageID.313–14. Stinson was observed stopping at the

Jackson Street residence several times throughout the day he was surveilled. *Id.* at PageID.310–311. In another recorded call from jail, Stinson admitted that the baggies and scale found in the initial search, necessary to package drugs for sale, were his. *Id.* at PageID.363–64. Later, on the same phone call, Stinson told VanRenan that the police didn't find the rest of "his stuff" worth thousands of dollars and asked her to give it to someone else. *Id.* at PageID.361. In another phone call, Stinson suggested sending known drug traffickers to the residence to retrieve his "stuff" or his "sh\*\*." *Id.* at PageID.367–69. Stinson's inculpatory statements led to another search. *Id.* at PageID.370. During that search, several baggies and three different controlled substances were found in a locked shed. *Id.* at PageID.374–80. VanRenan could not provide a key to the shed. *Id.* at PageID.374, 396. Stinson admitted in subsequent jail phone calls that the "stuff" or the sh\*\* was his. *Id.* at PageID.403–04.

Stinson's conviction under a constructive possession theory for the drugs recovered from the Jackson Street address is supported by the fact that he was seen several times going to and from the address where the drugs were found. *See United States v. Sheppard*, 149 F.3d 458, 462 (6th Cir. 1998) (upholding conviction under constructive possession theory when, among other facts, the defendant "was seen several times at the house in which the drugs were found."). Stinson had a relationship with Ms. VanRenan, who lived at the address. This further supports a finding

15

that Stinson possessed the drugs. *See Anderson v. Trombley,* 451 F. App'x at 475. Stinson admitted that the scale, baggies, and drugs were his. Stinson's admission in phone calls that the drugs and related paraphernalia belonged to him was sufficient to support his conviction under a constructive possession theory. *See United States v. Braswell*, 516 F. App'x 572, 575 (6th Cir. 2013). Although Stinson used slang terms like "stuff" and sh\*\* to refer to the controlled substances, a rational trier of fact could reasonably conclude from the context of the conversation that Stinson was referring to controlled substances. *See, e.g., United States v. Craven*, 478 F.2d 1329, 1338 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977) (petitioner's use of the term "stash" sufficient to connect him to the drugs seized from the house).

The Michigan Court of Appeals' rejection of Stinson's sufficiency of evidence claim was reasonable, precluding habeas relief. *Anderson,* 451 F. App'x at 475.

### IV. CONCLUSION

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to Stinson. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant must show that reasonable jurists could debate whether or agree that the petition should have been

16

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must prove that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

Stinson has failed to make a substantial showing of the denial of a federal constitutional right. Although jurists of reason would not debate this Court's resolution of Stinson's claims, the issues presented here are not frivolous. Thus, an appeal could be taken in good faith. Therefore, Stinson may proceed in forma pauperis on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Stinson is **GRANTED** leave to appeal in forma pauperis.

Dated: May 14, 2024      s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE